**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James M. Surowiec,<br><br>            Plaintiff,<br><br>vs.<br><br>Capital Title Agency, Inc., an Arizona corporation; and Scott Romley, an individual,<br><br>            Defendants. | No. CV-09-2153-PHX-DGC<br><br>**ORDER** |

In November 2006, Plaintiff James Surowiec purchased a condominium unit located in Scottsdale, Arizona from developer Shamrock Glen, LLC. Scott Romley, an employee with Capital Title Agency, Inc. ("Capital"), served as escrow agent for the transaction. Plaintiff alleges, among other things, that Romley failed to disclose before closing that the property would remain encumbered by deeds of trusts held by certain investors in the Shamrock Glen development. Plaintiff claims that those junior liens and related foreclosure actions brought by the investors have prevented him from selling the condominium, resulting in financial loss.

Plaintiff filed suit against Romley and Capital in November 2009. Doc. 1. The amended complaint asserts claims for breach of contract, breach of fiduciary duty, fraud, negligent misrepresentation, negligence, and breach of the implied covenant of good faith and fair dealing. Doc. 27. Plaintiff seeks compensatory and punitive damages. *Id.*

The parties have filed motions for summary judgment. Docs. 79, 92. Plaintiff has filed two motions for sanctions. Docs. 82, 97. The motions are fully briefed. For

reasons that follow, the Court will grant in part Defendants' summary judgment motion, deny Plaintiff's summary judgment motion, and grant in part the motions for sanctions.[1]

I.  **Summary Judgment Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

II. **Defendants' Summary Judgment Motion.**

Defendants move for summary judgment on the ground that Plaintiff cannot establish the amount of compensatory damages with reasonable certainty. Doc. 79 at 1. Defendants further argue that summary judgment is appropriate on the claim for punitive damages because there is no evidence that Defendants acted with an evil mind or malice toward Plaintiff. *Id.* The Court will address each argument in turn.

A.  **Compensatory Damages.**

It is well established "that 'certainty in amount' of damages is not essential to recovery when the *fact* of damage is proven." *Gilmore v. Cohen*, 386 P.2d 81, 82 (Ariz. 1963) (citations omitted; emphasis in original). This rule is "simply a recognition that doubts as to the extent of injury should be resolved in favor of the innocent plaintiff and against the wrongdoer." *Id.* The plaintiff in every case, however, "should supply some

---

[1] The requests for oral argument are denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

reasonable basis for computing the amount of damage and must do so with such precision as, from the nature of his claim and the available evidence, is possible." *Id.*

Because Defendants do not seek summary judgment as to liability, the Court will assume the allegations of wrongdoing on their part can be proven at trial. Construing the evidence in the light most favorable to Plaintiff, a jury reasonably could conclude that Plaintiff has suffered more than $100,000 in compensatory damages as a result of Defendants' misconduct.

Plaintiff purchased his condominium unit as a short-term investment. Doc. 100 ¶ 33. He paid $137,000 for the unit in November 2006. *Id.* ¶ 40. He expected to receive a marketable title free and clear of all liens (*id.* ¶ 13), and would not have bought the property if he had known that it remained encumbered with liens (Doc. 113-2 at 56-57). In May 2007, after discovering that the property was encumbered by numerous liens and likely subject to future litigation, Plaintiff was advised by title and real estate experts that the title problems had to be resolved before the property could be sold. Doc. 100 ¶ 36. While Plaintiff waited for some resolution through the fall of 2007, similar unencumbered units in the Shamrock Glen development sold for more than $130,000. *Id.* ¶ 41. As of June 2010, Plaintiff's unit remained subject to liens and was appraised at $31,000. *Id.* ¶¶ 39, 44. Accepting this evidence as true, a jury could find with reasonable certainty that Plaintiff has suffered more than $100,000 in damages taking into account the $137,000 purchase price, the $130,000 selling price for units in the fall of 2007, the property's current value of $31,000, and the fact that Defendants' actions prevented Plaintiff from selling the property when its value was higher.

Plaintiff's damages are speculative, Defendants contend, because he has made no serious effort to sell the property. Doc. 79 at 6. But Plaintiff's real estate expert, Roger Williams, has opined that the liens on the property rendered it virtually unmarketable, making any attempt to sell an exercise in futility. Doc. 100 ¶ 42. Defendants assert that Mr. Williams contradicted his own opinion by admitting during his deposition that there

are buyers who purchase property with title defects. Doc. 112 ¶ 42. This purported inconsistency goes to the weight of Mr. William's opinion, not its admissibility. "Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions, not those of a judge[.]" *Anderson*, 477 U.S. at 255.

Defendants further assert that because Plaintiff still holds title to the property, he will reap the benefits from the expected real estate market rebound. Doc. 79 at 7. Defendants, of course, are free to make this argument to the jury, but a potential future boom in the real estate market does not render uncertain the damages currently suffered by Plaintiff.

Defendants argue for the first time in their reply brief that Plaintiff cannot establish that their actions caused the loss in market value, as opposed to the steep decline in the Arizona real estate market. Doc. 111 at 3-5. The Court will not consider this argument. "It is well established in this circuit that courts will not consider new arguments raised for the first time in a reply brief." *Bach v. Forever Living Prods. U.S., Inc.*, 473 F. Supp. 2d 1110, 1122 n.6 (W.D. Wash. 2007) (citing *Lentini v. Cal. Ctr. For the Arts*, 370 F.3d 837 n.6 (9th Cir. 2004)); *see Gadda v. State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir. 2007).

Moreover, while Plaintiff makes clear that the liens were not a positive selling point and certainly did not increase the property's value (Doc. 99 at 18 n.4), he does not dispute that the decrease in value is due in part to the general downturn in the real estate market. Plaintiff claims that he was unable to sell the property as the downturn worsened because it was encumbered by liens Defendants failed to extinguish at closing. A plaintiff "is not required to prove causation to a certainty; 'the jury must be permitted to make causal judgments from its ordinary experience without demanding impossible proof about what would have occurred if the defendant behaved [properly].'" *Harris v. State ex rel. Dep't of Transp.*, No. 1 CA-CV 10-0019, 2010 WL 5313761, at *4 (Ariz. Ct. App. Dec. 21, 2010) (citation omitted). Whether Defendants' alleged misconduct caused

damages is for the jury to decide.

Defendants' reliance on *Soilworks v. Midwest Industrial Supply, Inc.*, 575 F. Supp. 2d 1118 (D. Ariz. 2008), is misplaced. The lost profit damages sought in that case fell far short of the "reasonable certainty" standard because the plaintiff presented no documents or other information in support of its damages claim. *Id.* at 1128. Plaintiff, by contrast, has presented evidence from which damages in excess of $100,000 reasonably may be found.

The Court will deny Defendants' summary judgment motion with respect to compensatory damages.

### B.    Punitive Damages.

Punitive damages are those damages awarded "in excess of full compensation to the victim in order to punish the wrongdoer and deter others from emulating his conduct." *Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 675, 679 (Ariz. 1986). "Punishment is an appropriate objective in a civil case only if the defendant's conduct or motive 'involves some element of outrage similar to that usually found in a crime.'" *Gurule v. Ill. Mut. Life & Cas. Co.*, 734 P.2d 85, 86 (Ariz. 1987) (quoting *Rawlings v. Apodaca*, 726 P.2d 565, 578 (Ariz. 1986)). Where the defendant did not act with an "evil mind," compensatory damages usually provide sufficient deterrence. *Id.*

Plaintiff claims that the requisite evil mind may be inferred from Romley's active participation in an ongoing fraud. Doc. 99 at 14. But to recover punitive damages, "something more is required over and above the 'mere commission of a tort.'" *Linthicum*, 723 P.2d at 679 (quoting *Rawlings*, 726 P.2d at 578). This "something more" must be established by clear and convincing evidence. *Id.* at 681.

When ruling on summary judgment, the Court must also consider the burden of proof to be satisfied at trial – in this case, clear and convincing evidence of an evil mind. As the Supreme Court has explained, "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary

burden." *Anderson v. Liberty Lobby*, 477 U.S. 242, 254 (1986). No triable issue of fact exists if the plaintiff presents insufficient evidence for a jury to find an evil mind by clear and convincing evidence. *See id.* at 254-55.

The Arizona Supreme Court has made clear that "punitive damages are not recoverable in every fraud case, even though fraud is an intentional tort." *Rawlings*, 726 P.2d at 578 n.8; *see Dawson v. Withycombe*, 163 P.3d 1034, 1062 & n.27 (Ariz. Ct. App. 2007). Even when construed in his favor, Plaintiff's evidence does not show "aggravated and outrageous" conduct on the part of Defendants sufficient to support an award of punitive damages. *Linthicum*, 723 P.2d at 680. Plaintiff admits that the title commitment and HUD-1 settlement statement he received prior to closing disclosed the existence of the junior lienholders and indicated that they were to be paid nothing out of escrow while the seller, Shamrock Glen, was to be paid more than $10,000. Docs. 80, 100 ¶¶ 6-11. While Romley otherwise may have mishandled the escrow, particularly given his knowledge that investors expected to paid (Doc. 100 ¶ 21), his misconduct constitutes fraud or breach fiduciary duty, not "aggravated, wanton, reckless or malicious intentional wrongdoing[.]" *Dawson*, 163 P.3d at 1062. Plaintiff has failed to present sufficient evidence for a reasonable jury to find an evil mind by clear and convincing evidence.

Because there is no triable issue as to an award of punitive damages against Romley, Capital may not be held vicariously liable for such damages. *See id.* Defendants' motion for summary judgment will be granted with respect to punitive damages.

### III. Plaintiff's Summary Judgment Motion.

Plaintiff seeks summary judgment on his claim for breach of fiduciary duty. Doc. 92. "The escrow relationship gives rise to two specific fiduciary duties to the principals: to comply strictly with the terms of the escrow agreement and to disclose facts that a reasonable escrow agent would perceive as evidence of fraud being committed on a party to the escrow." *Maxfield v. Martin*, 173 P.3d 476, 478 (Ariz. Ct.

App. 2007); *see Maganas v. Northroup*, 663 P.2d 565, 569 (Ariz. 1983). Defendants breached their fiduciary duties, Plaintiff claims, by failing to disclose that the junior lienholders would not be paid out of escrow, that escrow funds were being diverted to the seller, that the seller intended to provide equity gifts to certain buyers, and that blank pre-signed releases would be recorded in lieu of unit-specific releases provided directly by the junior lienholders. Doc. 92 at 8.

Whether an escrow agent has breached a fiduciary duty generally "is a question for the trier of fact." *Mur-Ray Mgmt. Corp. v. Founders Title Co.*, 819 P.2d 1003, 1009 (Ariz. Ct. App. 1991). Defendants have presented evidence that they timely disclosed to Plaintiff that the junior lienholders would be paid no money out of escrow (Doc. 110 ¶ 49) and that the seller was to be paid $10,191.57 from escrow proceeds (*id.* ¶ 48). Defendants also have presented evidence that the junior lienholders executed valid releases for each unit without placing any restrictions on their use (*id.* ¶ 56), and that it was not until after Plaintiff closed escrow on his unit that they learned a certain investor objected to the use of the pre-signed releases in future transactions (*id.* ¶¶ 58-64). The equity gifts were made by the seller after Plaintiff closed escrow. *Id.* Plaintiff has presented no evidence showing that, prior to his closing, Defendants had knowledge of the seller's intention to make those gifts. The Court concludes that whether Defendants have breached a fiduciary duty by failing to follow the terms of the escrow agreement or failing to disclose known fraud, *see Maganas*, 663 P.2d at 568, is a question of fact for the jury. *See Mur-Ray Mgmt.*, 819 P.2d at 1009.

Moreover, in an action asserting a claim for breach of fiduciary duty, "like all tort actions, a plaintiff must allege and prove the existence of a duty owed, a breach of that duty, and damages causally related to such breach." *Smethers v. Campion*, 108 P.3d 946, 949 (Ariz. Ct. App. 2005). Plaintiff argues that a breach of fiduciary duty is established as a matter of undisputed fact, but he makes no attempt in his summary judgment motion to prove the essential elements of causation and damages. *See Smethers*, 108 P.3d at 949

("The elements of breach and causation, and the measure of damages, if any, are generally questions for the trier of fact."). Plaintiff's motion for summary judgment on the claim for breach of fiduciary duty (count two) will be denied.

**IV.  Spoliation of Evidence.**

"The failure to preserve electronic or other records, once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences." *Thompson v. U.S. Dep't of Housing & Urban Dev.*, 219 F.R.D. 93, 100 (D. Md. 2003). Spoliation is the destruction or material alteration of evidence, or the failure to otherwise preserve evidence, for another's use in litigation. *See Ashton v. Knight Transp., Inc.*, --- F. Supp. 2d ----, 2011 WL 734282, at *25 (N.D. Tex. Feb. 22, 2011). Plaintiff seeks various sanctions against Defendants for spoliation of emails and other electronic records concerning, among other things, Romley's involvement with title and escrow problems in the sale of Shamrock Glen properties. Doc. 82.

"A party seeking sanctions for spoliation of evidence must prove the following elements: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind;' and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence[.]" *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009) (quoting *Thompson*, 219 F.R.D. at 101); *see Victor Stanley, Inc. v. Creative Pipe, Inc.*, ("*Victor Stanley II*"), 269 F.R.D. 497, 520-21 (D. Md. 2010); *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1070-78 (N.D. Cal. 2006); *Zublake v. UBS Warburg LLC* ("*Zublake IV*"), 220 F.R.D. 212, 216 (S.D.N.Y. 2003). The Court will address each element separately.

**A.  Duty to Preserve – the Trigger Date.**

It is well established that the "duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation." *Ashton*,

2011 WL 734282, at *26. Stated differently, the duty to preserve is triggered "not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Morford v. Wal-Mart Stores, Inc.*, No. 2:09-cv-02251-RLH-PAL, 2011 WL 635220, at *3 (D. Nev. Feb. 11, 2011); *see Zublake IV*, 220 F.R.D. at 216; *Napster.*, 462 F. Supp. 2d at 1067-68.

Capital was on notice of reasonably foreseeable litigation concerning title and escrow deficiencies in the sale of Shamrock Glen properties, as well as Romley's direct involvement in those deficiencies, no later than April 28, 2007, when an attorney for Shamrock Glen sent a letter to Capital's in-house counsel, Lawrence Phelps. Doc. 82-3. The letter explained that in response to inquiries from homeowners about outstanding liens on their properties, Shamrock Glen investigated the matter and was surprised to learn that while there had been more than twenty units sold, Capital had recorded only four releases from the investors. *Id.* at 2. The threat of future litigation was clear: the letter informed Phelps that some investors "have sought independent legal advice and are anticipated to claim approximately two million dollars in damages," warned that Capital "faces significant potential exposure" in the matter, requested that Phelps provide Shamrock Glen with a copy of Capital's title insurance policy for the property, and advised that it may be prudent for him to provide the insurer with "written notification of these *anticipated claims*." *Id.* at 3 (emphasis added).

The likelihood of litigation was underscored by other related events. Romely sought legal advice with respect to his involvement in Shamrock Glen in December of 2006 or January of 2007, and apparently sought it from Phelps. Doc. 98, Ex. 10, at 93-94. Phelps testified that by February 1, 2007, he knew litigation was "certainly possible." Doc. 82, Ex. 1 at 137. On April 30, 2007, an email sent to Romley and copied to Phelps asserted, in bold and underscored language, that "[t]his matter must get cleared up immediately or I can assure you that litigation is imminent." Doc. 98, Ex. 12.

Capital addresses only the April 28 letter, and relegates even this discussion to a

footnote in its response brief. Noting that the letter does not mention Plaintiff by name, Capital asserts that the letter triggered no duty to preserve evidence relating to any potential claim *by Plaintiff*. Doc. 95 at 3 n.4. But the duty to preserve evidence "is a duty owed to the *court*, not to the party's potential adversary[.]" *Ashton*, 2011 WL 734282, at *26 (citing *Victor Stanley II*, 269 F.R.D. at 525-26) (emphasis in original). Moreover, the threat of litigation from homeowners such as Plaintiff is readily apparent from the face of the letter because it discusses the liens encumbering their properties (Doc. 82-3 at 2) and explicitly states that Capital faces "significant potential exposure" for its "failures to the various investors, *homeowners*, and Shamrock Glen" (*id.* at 3) (emphasis added).

Where a "letter openly threatens litigation, then the recipient is on notice that litigation is reasonably foreseeable and the duty to preserve evidence relevant to that dispute is triggered." *Goodman*, 632 F. Supp. 2d at 511. "'The preservation obligation runs first to counsel, who has 'a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction.'" *See Richard Green (Fine Paintings) v. McClendon*, No. 08 Civ. 8496(JGK)(JCF), 262 F.R.D. 284, 290 (S.D.N.Y. 2009) (citations omitted).

When Mr. Phelps, as in-house counsel for Capital, received the April 28, 2007 letter, he was "obligated to suspend [Capital's] document retention/destruction policy and implement a 'litigation hold' to ensure the preservation of relevant documents." *Goodman*, 632 F. Supp. 2d at 511 (quoting *Thompson*, 219 F.R.D. at 100). He did not. Mr. Phelps testified that he issued no litigation hold and did not otherwise takes steps to suspend Capital's routine destruction of emails more than 30 days old. Nor did he seek to preserve the emails then existing on Mr. Romley's computer.

Capital's reliance on *Napster* is misplaced. *Napster* stands for the unremarkable proposition that no duty to preserve arises absent a reasonable expectation of being "named as a defendant in any pending or future litigation." 462 F. Supp. 2d at 1068.

Once a party knows that litigation is reasonably anticipated, the party owes a duty to the judicial system to ensure preservation of relevant evidence. *See Ashton*, 2011 WL 734282, at *26; *Goodman*, 632 F. Supp. 2d at 511.

**B.     Culpability.**

"Courts have not been uniform in defining the level of culpability – be it negligence, gross negligence, willfulness, or bad faith – that is required before sanctions are appropriate[.]" *Ashton*, 2011 WL 734282, at *26. Nor is there consensus as to how the level of culpability is to be determined, or what prejudice, if any, may be presumed from culpable conduct. At least one court has concluded that, once the duty to preserve is triggered, the failure to issue a written litigation hold constitutes gross negligence per se and prejudice may be presumed "because that failure is likely to result in the destruction of relevant information." *Pension Committee of Univ. of Montreal Pension Plan v. Banc of America Sec.* ("*Pension Committee*"), 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010). Other courts have found the failure to implement a litigation hold to be an important factor in determining culpability, but not per se evidence of culpable conduct giving rise to a presumption of relevance and prejudice. *See, e.g.*, *Hayes v. Dart*, No. 08 C 4834, 2010 WL 140387, at *4 (N.D. Ill. Jan. 11, 2010); *Sampson v. City of Cambridge*, 251 F.R.D. 172, 181-82 (D. Md. 2008); *see also Victor Stanley II*, 269 F.R.D. at 524, 529-31 (discussing how courts differ in the fault they assign where a party fails to implement a litigation hold).

The Court disagrees with *Pension Committee*'s holding that a failure to issue a litigation hold constitutes gross negligence per se. Per se rules are too inflexible for this factually complex area of the law where a wide variety of circumstances may lead to spoliation accusations. An allegedly spoliating party's culpability must be determined case-by-case.

In this case, Capital has provided no reasonable explanation for its failure to preserve. It does not claim that the April 28 letter was overlooked or misunderstood, that

preservation was not feasible, or that it undertook some preservation efforts and innocently failed to take others. Capital instead minimizes the April 28 letter, arguing that it did not provide notice of a potential lawsuit from the plaintiff. As noted above, however, the duty of preservation is not owed to specific potential plaintiffs, but to the judicial system. The Court finds that the April 28 letter and the other events that occurred before and shortly after the letter clearly placed Capital on notice that litigation was likely. The anticipated litigation was known to Capital's lawyer, Mr. Phelps, as was Romley's role at the center of the problem. Capital's complete failure to suspend its ongoing destruction of emails and to capture the evidence on Mr. Romley's computer was more than negligent. The Court finds it constituted gross negligence.

### C.     Scope of the Duty to Preserve – Relevant Evidence.

Some courts have concluded that the scope of the duty to preserve is coextensive with disclosure obligations and available discovery under Rule 26 of the Federal Rules of Civil Procedure. *See, e.g.*, *Zublake IV*, 220 F.R.D. at 217-18; *Young v. Facebook, Inc.*, No. 5:10-cv-03579-JF/PVT, 2010 WL 3564847, at *1 (N.D. Cal. Sept. 13, 2010) (parties have a duty to preserve evidence "that they know is relevant or reasonably could lead to the discovery of admissible evidence"). The Court need not determine the outer contours of the duty in this case. Whatever those outer boundaries, they clearly encompassed ongoing emails to and from Romley and information on Romley's computer. *See Zublake IV*, 220 F.R.D. at 218 (duty to preserve certainly extends to "key players"); *Goodman*, 632 F. Supp. 2d at 512.

In *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598 (S.D. Tex. 2010), the court declined to follow the approach taken in *Pension Committee* of presuming relevance and prejudice when the spoliating party is grossly negligent, noting that requiring "a showing that the lost information is relevant and prejudicial is an important check on spoliation allegations and sanctions motions." 688 F. Supp. 2d at 616-17. *Rimkus* also made clear, however, that when "the evidence in the case as a

whole would allow a reasonable fact finder to conclude that the missing evidence would have helped the requesting party support its claims or defenses, that may be a sufficient showing of both relevance and prejudice to make [sanctions] appropriate." *Id.* at 617. The Court has no doubt that this standard is satisfied here.

The Court is familiar with the facts and evidence in this case, having held several discovery conference calls with the parties (Docs. 29, 42, 46, 74) and having considered the summary judgment evidence (Docs. 80, 93, 100, 110) and evidence presented in connection with the motion for sanctions (*see* Docs. 82, 95, 98). That evidence, when considered as a whole and in light of Plaintiff's claims, permits the reasonable inference that Capital's failure to put a litigation hold in place resulted in the loss of relevant evidence. As of April 2007, Capital routinely deleted electronic records pursuant to its 30-day retention policy. Although Capital asserts that it began preserving all emails as a matter of course in October of 2007, its failure to stop email destruction in April of 2007 resulted in the loss of emails between March and September of 2007, not to mention older emails on Romley's computer. The year 2007 was a period of intense communication and negotiation concerning the Shamrock Glen problem, and the Court has no doubt that preserving emails exchanged in March through September of that year would have provided valuable information to Plaintiff. Similarly, acting in April of 2007 to preserve the older emails then on Romley's computer surely would have preserved valuable evidence for Plaintiff. One example is the February 1, 2007 email that managed to survive and provided very helpful evidence to Plaintiff. Doc. 95-2 at 2. Plaintiff has shown relevance and prejudice.

### D.   Appropriate Sanction.

Because spoliation is considered an abuse of the judicial process, *see Ashton*, 2011 WL 734282, at *26, courts may impose sanctions "as part of their inherent power to 'manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Morford*, 2011 WL 635220, at *3 (quoting *Napster*, 462 F. Supp. 2d at 1066);

*see Victor Stanley II*, 269 F.R.D. at 534. Courts in this Circuit have suggested that a "finding of fault or simple negligence is a sufficient basis on which a [c]ourt can impose sanctions against a party that has destroyed documents." *Melendres v. Arpaio*, No. CV-07-2513-PHX-GMS, 2010 WL 582189, at *5 (D. Ariz. Feb. 12, 2010) (citing *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfr'g Corp.*, 982 F.2d 363, 369 n.2 (9th Cir. 1992)). The Court need not determine whether sanctions may be imposed for mere negligence given the finding of gross negligence on the part of Capital. "Sanctions that a federal court may impose for spoliation include assessing attorney's fees and costs, giving the jury an adverse inference instruction, precluding evidence, or imposing the harsh, case-dispositive sanctions of dismissal or judgment." *Victor Stanley II*, 269 F.R.D. at 533; *see Morford*, 2011 WL 635220, at *3. While the court has discretion to impose spoliation sanctions, *see Leon*, 464 F.3d at 957-58, it "must determine which sanction best (1) deters parties from future spoliation, (2) places the risk of an erroneous judgment on the spoliating party, and (3) restores the innocent party to their rightful litigation position." *Ashton*, 2011 WL 734282, at *30 (citing *Victor Stanley II*, 269 F.R.D. at 533-34).

Plaintiff primarily seeks the entry of a default judgment against Defendants. Doc. 8-14. Plaintiff alternatively seeks a sanction of preclusion (*id.* at 14-15), but does not identify what evidence should be precluded. *See Leon*, 464 F.3d at 960 (preclusion sanction for spoliation would be futile). This Circuit has established a five-part test to determine whether a terminating sanction is just: "'(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998) (citation omitted); *see Leon*, 464 F.3d at 958 (citing *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)).

The first two factors favor a default judgment. Because the Court and the public

have a strong interest in judicial efficiency and the prompt resolution of litigation, Capital's failure to preserve evidence, and the resulting delay caused by multiple discovery disputes and the instant motion for sanctions, weigh in favor of default judgment. *See Leon*, 464 F.3d at 958 n.5. The fourth factor, as always, weighs against a terminating sanction. The fifth factor also weighs against a case-dispositive sanction as the lesser sanction of an adverse inference instruction is available. The third factor – prejudice – "'looks to whether the spoliating party's actions impaired the non-spoliating party's ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959 (citation and brackets omitted). While it is apparent that Plaintiff has been prejudiced by the spoliation of emails and other communications concerning Romley's involvement with the Shamrock Glen development, the Court cannot conclude that the spoliation will force Plaintiff to rely on "'incomplete and spotty'" evidence at trial. *Leon*, 464 F.3d at 959 (quoting *Anheuser-Busch*, 69 F.3d at 354). Applying the five-factor test, the Court finds entry of default judgment to be unwarranted. *See Goodman*, 632 F. Supp. 2d at 519 (finding terminating sanction inappropriate where the spoliating party did not act in bad faith); *Napster*, 462 F. Supp. 2d at 1078 (the court should "impose the 'least onerous sanction' given the extent of the offending party's fault and the prejudice to the opposing party").

Alternatively, Plaintiff seeks an adverse inference jury instruction. Doc. 82 at 15. "When a party is prejudiced, but not irreparably, from the loss of evidence that was destroyed with a high degree of culpability, a harsh but less extreme sanction than dismissal or default is to permit the fact finder to presume that the destroyed evidence was prejudicial." *Rimkus*, 688 F. Supp. 2d at 618. The Court finds an adverse inference instruction to be warranted in this case. The parties shall submit proposed adverse inference instructions with the other jury instructions to be filed before trial.

Plaintiff's motion for sanctions for spoliation of evidence will be denied with respect to the requests for default judgment or preclusion, but granted as to the request for

an adverse inference instruction.

**V.     Plaintiff's Motion for Sanctions Under Rule 37 and Inherent Powers.**

Plaintiff seeks sanctions for alleged discovery abuses on the part of Capital under Rule 37 and the Court's inherent powers. Doc. 97. According to Plaintiff, Capital has acted in bad faith by misrepresenting that document searches were ongoing and electronic data was lost during data migration, by using only literal search terms and thereby ensuring that no documents would be found, and by identifying no specific responsive document in a "last minute data dump." *Id.* at 2. Plaintiff seeks severe sanctions, including an *in camera* examination of Mr. Phelps' conduct for disciplinary purposes, an order striking Defendants' expert witness report and testimony, and an order declaring that all privilege claims have been waived. *Id.* at 15-16. Plaintiff also seeks monetary sanctions, including attorneys' fees and costs. *Id.* at 16. The Court finds that monetary sanctions are warranted.

"Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). The imposition of sanctions under a federal court's inherent powers is warranted where a party has acted in bad faith, that is, "vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46 (citations omitted). Rule 37 sanctions are appropriate only where the discovery violation is "due to willfulness, bad faith, or fault of the party." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002) (citations omitted).

The Court is familiar with the alleged discovery abuses. *See* Docs. 29, 42, 46, 74, 96. Based on that knowledge, and having considered the facts and arguments presented in the parties' briefs (Docs. 97, 103, 108), the Court finds that Capital acted willfully in connection with its response (or lack thereof) to Plaintiff's initial request for production of documents served in February 2010, specifically, requests 3, 4, and 5. Doc. 97-1 at 2-6. Those requests sought all emails from Romley regarding the failure to follow title commitment instructions and all communications of Romley, from the date Capital began

1    serving as the title agency for Shamrock Glen until the date of Romley's termination,
2    including written correspondence and emails directed to the investor lienholders or
3    otherwise pertaining to the Shamrock Glen development. *Id.* at 3. Capital responded in
4    March 2010 by asserting boilerplate objections and producing no documents. *Id.* at 10-
5    11.

6    Plaintiff's requests specifically sought communications of Romley pertaining to
7    the Shamrock Glen development, but the search parameters designed by Mr. Phelps
8    included only Plaintiff's name and escrow number – "James M. Surowiec" and
9    "20060669." *Id.* at 31-32. Those terms were not calculated to capture communications
10   to or from Romley as sought in the document request. Not surprisingly, they produced
11   "zero results." *Id.* at 32.

12   The Court ordered a new search in August 2010 (Doc. 42), which resulted in the
13   production of more than 4,000 documents (*see* Doc. 97-3 at 54, Ex. 20). This substantial
14   production was made only three days before the close of discovery (*see* Docs. 14, 40),
15   and required a second-round of depositions of Defendant Romley, Mr. Phelps, and Mr.
16   Brightly (*see* Doc. 73).

17   "Selection of the appropriate search and information retrieval technique requires
18   careful advance planning by persons qualified to design effective search methodology,"
19   and the "implementation and methodology selected should be tested for quality
20   assurance[.]" *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 262 (D. Md.
21   2008). Capital's unreasonably narrow search for documents using only Plaintiff's name
22   and escrow number, and its assertion of unfounded boilerplate objections to document
23   requests 3, 4, and 5, are inexcusable. Given that thousands of responsive documents were
24   discovered once a proper search was performed, and in light of the late production of
25   those documents, the Court concludes that Capital acted willfully in failing timely and
26   adequately to respond to the document requests.[2]

27
28       [2] Having considered the record and the arguments made in the parties briefs, the

- 17 -

District courts are given "particularly wide latitude" to issue Rule 37 sanctions. *Yeti by Molly, Ltd. V. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Similarly, pursuant the inherent power to control their dockets, district courts have discretion to impose a variety of sanctions for discovery abuses. *Oliva v. Sullivan*, 958 F.2d 272, 273 (9th Cir. 1992). The Court concludes that Capital's conduct warrants an award of monetary sanctions, but no harsher sanction.

Plaintiff requests an award of attorneys' fees and costs incurred as a result of Capital's misconduct. Doc. 97 at 16. Under Rule 37(d)(3), an offending party may be ordered to pay the other party's "reasonable expenses" caused by the discovery abuse. With respect to pro se litigants, including those that are licensed attorneys, the general rule is that attorneys' fees are not a payable "expense" under Rule 37 "as there is no direct financial cost or charge associated with the expenditure of one's own time." *Pickholtz v. Rainbow Techs., Inc.*, 284 F.3d 1365, 1375 (Fed. Cir. 2002); *see Fosselman v. Gibbs*, No. CV 06-00375 PJH (NJV), 2010 WL 1446661, at *1 (N.D. Cal. Apr. 7, 2010)*; see also Kay v. Ehrler*, 499 U.S. 432, 438 (1991) (licensed attorney proceeding pro se not entitled to an award attorneys' fees). The "reasonable expenses" awardable under Rule 37 do include, however, "actual costs incurred as a result of misconduct[.]" *Fosselman*, 2010 WL 1446661, at *1.

"Fees to pro se litigants are awardable under the court's inherent power." *Jacobs v. Scribner*, No. 1:06-cv-01280-AWI-GSA-PC, 2011 WL 98585, at *1 (E.D. Cal. Jan. 12, 2011). A rule to the contrary "would place a pro se litigant at the mercy of an opponent who might engage in otherwise sanctionable conduct." *Pickholtz*, 284 F.3d at 1375.

As a sanction for Capital's discovery abuses, the Court, pursuant to Rule 37 and its inherent powers, will require Capital to (1) reimburse the actual expenses Plaintiff

---

Court does not find willfulness or bad faith on the part of Capital with respect to the allegations that it misrepresented searches were ongoing, that it misrepresented electronic data had been lost during data migration, and that its late production violated the Court's order requiring production and identification of responsive documents. *See* Doc. 97 at 2.

incurred as a result of the misconduct, including the expense for the second-round of depositions, and (2) pay reasonable attorneys' fees to compensate Plaintiff for the time he spent challenging the misconduct, preparing for and taking the additional depositions, and bringing the instant motion.

The parties are directed to confer in good faith to resolve any disputes concerning the amount of reasonable expenses and fees. *See* LRCiv 54.2(d)(1). If the parties are unable to agree, Plaintiff may file a motion pursuant to Local Rule 54.2. Any such motion shall be filed, with a supporting memorandum, on or before **May 20, 2011**, with the response and reply briefs due in accordance with the time periods provided in Local Rule 54.2(b)(3) and (4).

**IT IS ORDERED:**

1. Defendants' motion for summary judgment (Doc. 79) is **granted in part** and **denied in part**. The motion is granted with respect to punitive damages and denied as to compensatory damages.

2. Plaintiff's motion for summary judgment (Doc. 92) is **denied**.

3. Plaintiff's motion for sanctions for spoliation of evidence (Docs. 82, 97) is **granted in part** and **denied in part** as set forth in this order.

4. Plaintiff's motion for sanctions pursuant to Rule 37 and the Court's inherent powers (Doc. 97) is **granted in part** and **denied in part** as set forth in this order.

5. Plaintiff's motion to strike reply brief (Doc. 114) is **denied**.

6. The Court will set a final pretrial conference by separate order.

7. By separate order the Court will also require the parties, during the month of June, to hold a settlement conference with Ninth Circuit mediators in Phoenix.

Dated this 4th day of May, 2011.

_____
David G. Campbell
United States District Judge